[No. 889.    October 2, 1901.]

## EARLY TIMES DISTILLERY COMPANY, et al., Appellants, v. CHARLES ZEIGER, et al., Appellees.

### SYLLABUS.

1.    The court has no authority in a suit in equity, to refer all of the issues to a master to hear, try and determine, and to report findings of fact and conclusions of law, except upon the consent of the parties.

2.    Where such a reference is made by the court, over the objection of one of the parties, and there being no right of appeal, such party is not bound by the findings of the master, nor are such findings in any view conclusive on the court.

Appeal from the district court of Bernalillo county, before J. W. CRUMPACKER, A. J.    Affirmed.

### STATEMENT OF THE CASE.

This cause comes to this court on appeal from the judgment of the district court of the Second District dismissing the plaintiffs' complaint herein with costs.

It appears from the evidence that in 1894 the defendant Zeiger, being indebted to the defendant the First National Bank of Albuquerque in upwards of the sum of $38,000, was pressed by the bank for a reduction of his indebtedness. Zeiger sought to borrow money on his ranch property in New Mexico and Arizona and cattle and other available assets, in order to make payment

on his indebtedness to the bank, but was unable to do so.  He advised Flournoy, the vice president of the bank to this effect, and inquired if Flournoy knew of any one who could help him.  Flournoy advised Zeiger that he thought Mrs. Lesguereux might make him a loan, as she had money in the hands of her kinsman, the president of the bank, for investment.  Thereupon it was arranged with the president of the bank that Mrs. Lesguereux would lend Zeiger the sum of $15,000, to be secured by deed of trust of certain lands then owned by Zeiger.  The deed of trust was executed by Zeiger, on October 26, 1894, to the president of the bank, as trustee of Mrs. Lesguereux, and the $15,000 passed to Zeiger's account at the bank, and he applied the same, by his check, in reduction of his indebtedness to the bank.  Mrs. Lesguereux had no personal knowledge of the loan made to Zeiger, her money being in the hands of Raynolds, the president of the bank, for investment, as she resided in Boston.

On April 7, 1895, Zeiger made a general assignment for the benefit of his creditors.  This action was begun May 11, 1895, and within six months after the deed of trust was recorded.  The complaint set forth that the deed was an act and device done and resorted to by Zeiger in contemplation of insolvency, and was made with a design to prefer the defendant bank to the exclusion in part of the plaintiffs and Zeiger's other creditors, and that it was not made in good faith, to secure any debt or liability created simultaneously therewith, but for the use and benefit of the defendant bank on account of a pre-existing indebtedness of Zeiger to the bank, and that Zeiger never actually received from Mrs. Lesguereux the $15,000, or any part of it.  Answers were filed by the First National Bank of Albuquerque, by Joshua S. Raynolds, and Mrs. Lesguereux, denying these allegations.

The issues joined were referred to a master in chancery, to take the testimony in the case and to report the same with his findings of fact and law.  This or-

der of reference was made by the court over the defendants' objection, taken on the ground that defendants were entitled to have the cause tried by the court, and upon the further ground that it was not a proper case for reference; defendants duly excepted to the order of reference as made by the court, and renewed the objection when the cause was brought to trial before the master, and the objection was overruled and defendants excepted.

NEILL B. FIELD and F. W. CLANCY for appellants.

The judge of the court below did not give to the master's findings and report, the weight to which they were entitled.

De Cordova v. Korte, 7 N. M. 681.

Bank v. McClellan, 9 N. M. 639.

W. F. & Co. Express v. Walker, 9 N. M. 182-3-4.

As a man must be held to intend the natural effects of his acts, it follows that Zeiger's act in making the deed of trust, was with the design to prefer the bank over his other creditors, and in contemplation of insolvency which actually existed.

Peckham v. Burrows, 19 Fed. Cases No. 10,897.

Martin v. Toof, 16 Fed. Cases, No. 9,167.

Vanderhoof v. Bank, 28 Fed. Cases, No. 16,-842.

Arnold v. Maynard, 1 Fed. Cases, No. 561.

Sawyer v. Turpin, 21 Fed. Cases No. 12,410.

Webb v. Sachs, 29 Fed. Cases, No. 17,325.

Applegate v. Merrill, 4 Metc. (Ky.) 22.

Story v. Graham, 4 Metc. (Ky.) 319.

Terrill v. Jennings, 1 Metc. (Ky.) 456-7.

Thomas v. Heffner, 11 Bush 350-60.

McKee v. Scobee, 80 Ky. 127-8.

Bank v. Jefferson, 10 Bush 329-30.

Letcher v. Stagner, 2 Duv. 424.

1 Greenleaf on Eq., sec. 82, 90 and 97.

ALONZO B. McMILLAN and W. B. CHILDERS for appellee.

Preferences of his creditors even by an insolvent debtor are valid.

> Burrill on Assignments, sec. 161.
>
> Pomeroy's Eq. Juris., sec. 994.
>
> Huntley v. Kingman, 152 U. S. 532.
>
> Clark v. White, 12 Peters 178.

This is not such a case as entitled the complainants to a reference as a matter of right either by the old equity practice or the provisions of the code. The findings of the master were not therefore binding upon the defendants.

> Kimberly v. Arms, 129 U. S. 512-524.
>
> Code of Civil Procedure, sec. 139.
>
> 17 Ency. of Pl. and Pr., 983, 992, 993.
>
> Plethorp v. Plethorp, 39 Atlantic 489-490; 184
> Pa. State 585.
>
> Camp v. Ingersoll, 86 N. Y. 433.

An implied waiver by appearing before the referee, can not be held operative in the face of a provision in the statute requiring an express waiver in writing.

> Flanders v. Tweed, 9 Wall. 425.
>
> Kearney v. Case, 12 Wall. 275.
>
> Gilman v. Ill. & Miss. Telegraph Co., 91 U. S.
> 603, 614.
>
> Madison Co. v. Warren, 106 U. S. 622.
>
> Alexander Co. v. Kimball, 106 U. S. 623 and
> note.
>
> Bond v. Dustin, 112 U. S. 606-7, also p. 604 and
> cases cited.

Especially Campbell v. Boyreau, 21 How. 223.

> Medler v. Hotel & O. H. Co., 6 N. M. 343.

The court has no power to declare a conveyance or transaction to be condemned by the statute, unless the

same is charged in the bill by allegations appropriate to bring it within the terms of the statute.

> Vincent v. McAlpine, 8 S. W. 872, 9 S. W. 168.
> Heidrich v. Silva, 12 S. W. 77.
> Powers, Assignee, v. Huntington Bank, 30 S. W. 64.
> Claflin & Co. v. Levith, 29 S. W. 452.
> Dravo v. Fabel, 132 U. S. 487, 489.

When a creditor assents to an assignment by proving his claim, accepting dividends or otherwise, he is estopped to attack it for any reason.

> Burrill on Assignments, sec. 503 and cases cited.
> 3 Am. & Eng. Ency. of Law (2 Ed.), 133 and cases cited.
> Adlum v. Yard, 1 Rawl. 163, 18 Am. Dec. 608.
> Barrows v. Alter, 7 Mo. 424.
> Rapalee v. Stewart, 27 N. Y. 311.
> Lanahan v. Latrohe, 7 Md. 268.
> Valentine v. Decker, 43 Md. 583.
> Daub v. Barnes, 1 Md. Ch. 127.
> Richards v. White, 7 Minn. 345.
> Scott v. Edes, 3 Minn. 271.
> Hemmasson v. Hicock, 37 Vt. 454.
> Trierson v. Branch, 30 Ark. 452.
> Ontario Bank v. Root, 2 Paige 478.
> Adler v. Bell (Ala.), 20 So. 83.
> Babcock v. Dill, 43 Barb. 577.
> Van Nest v. Yoe, 1 Sandf. Ch. 4.
> Gathercole v. Beder, 65 N. H. 211.
> Littlejohn v. Torner, 73 Wis. 113.
> Graves v. Rice, 148 N. Y. 227.
> Miller v. Parkhurst, 126 N. Y. 89.
> Jones v. Burgess (Ala.), 19 So. 851
> Robinson v. Pebworth, 71 Ala. 247.
> Rabitte v. Orr, 83 Ala. 185.
> Espy v. Comer, 80 Ala. 333.
> Moog v. Talbott, 72 Ala. 210.

Nanson v. Jacob, 93 Mo. 331, 3 Am. St. 531.
Staller v. Coates, 88 Mo. 514.
Ewing v. Cook, 85 Tenn. 332, 4 Am. St. 765.

OPINION OF THE COURT.

McMILLAN, J.—This is not a case which the court had power to refer to a master to hear, try and determine, or to report the evidence with his findings of fact and conclusions of law, except upon the written consent of the parties. Code of Civil Procedure (Compiled Laws of 1897, sec. 2685, sub-sec. 138, 139). Terpening v. Holton, 9 Colorado 306, in which the court, said: "Whether the order therefor be construed as directing the referee to try the issues and report a judgment, or to report a finding of fact which would have the effect of a special verdict, viewed as a compulsory order, it was issued without lawful authority for either purpose, and in such case a valid judgment could not be rendered or entered upon the report." Citing Bonner v. McPhail, 31 Barb. 106; Scudder v. Snow, 29 How. Pr. 95.

The defendants having objected to the reference at the time it was made by the court, and there being no right of appeal, and this objection having been renewed when the trial was moved before the master, the defendants were not bound by the findings of the master, nor were such findings in any view conclusive on the court. Kimberly v. Arms, 129 U. S. 512-524. In this case the court said: "It is not within the general province of a master to pass upon all the issues in an equity case, nor is it competent for the court to refer the entire decision of a case to him without the consent of the parties. It can not, of its own motion, or upon the request of one party abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers." In Palethrop v. Palethrop, 39 Atlantic 489-90, it is said: "We can not

consider a decree made under such circumstances as an adjudication upon any question to which it relates.    The appointment of the master was a simple nullity.  The decree resting on his report has absolutely nothing to support it, and it is therefore a nullity.  . . .  It may be said that the defendants are in no position to raise this question now because of their appearance before and recognition of the master as an officer of the court, and that as this case has been heard on the testimony, the result ought not now to be disturbed.    But it had not been heard before any one having the right to hear it.    Moreover, if we are to give to the mistakes of parties, or to the intentional disregard of our orders, the force and efficacy of regularity and law, what will become of our rules of practice?"    The court was justified in disregarding the findings of fact and conclusions of law, and examining the evidence as though that only had been reported by the master.    Medler v. H. & O. H. Co., 6 N. M. 343.    In this case it is said: "However, the majority of the court do not so interpret the case before us, but consider it simply as a partial reference under the powers of the chancellor, and as such, that the findings of fact of the master can be measured, if necessary, solely by an inquiry into the weight of the evidence. That being the law in this Territory, it is plain that the chancellor in the lower court committed no error in refusing to give any weight to the findings of facts by the master, but was justified in considering the testimony as though it was originally heard by himself."    And further, "The question is now presented, however, what, if any, weight is to be given the findings of the master as to facts when the chancellor has found differently than he had?    It would seem inevitable from the foregoing holding that the findings of the master must in such a case be entirely repudiated, and that we can only consider the testimony and the findings, if any, of the chancellor. But what weight is to be given the findings of the chancellor?    The reason usually advanced for giving so much

weight to the findings of a master—that he heard the witnesses, and beheld their demeanor upon the stand—does not apply to the case of the chancellor. Why, then, should any weight be given to his determination? Ought not this court, having all the evidence before it, as did the chancellor, pass upon it, unbiased by any presumption or weight growing out of the chancellor's findings? The court think not, but consider that we should give some weight to the findings of the chancellor, and not reverse those findings unless clearly opposed to the evidence."

The first finding of the master is to the effect that in October, 1894, Zeiger was insolvent, and so continued until his assignment, and knew that he was insolvent. The defendants excepted to this finding on the ground that there was no evidence tending to prove that Zeiger knew he was insolvent in 1894, or at any other time before this assignment. The court sustained this exception.

The only evidence as to Zeiger's insolvency, and his knowledge on the subject previous to his assignment, is given by the witness Geach. This witness states that for three years prior to the assignment he had been managing the wholesale liquor house belonging to Zeiger; that he knew very closely Zeiger's financial condition, and that for six months prior to the assignment Zeiger was not solvent. This witness, when asked upon cross-examination if it was not his opinion and he had not within six months prior to the assignment made statements on Zeiger's behalf showing that he was solvent, stated in answer that he could not say, that he did not remember. The evidence shows that Zeiger had five or six thousand head of cattle at the end of 1893. These were largely disposed of, or were lost by reason of drought, between that time and December, 1894. For six months prior to the assignment, Geach testified that Zeiger was engaged in the wholesale and retail liquor business and restaurant and other minor interests, and

that during this period he was engaged in closing out his cattle business. Raynolds testified that at the time the deed of trust was made the bulk of Zeiger's estate was supposed to be in cattle, and that at that time Zeiger was supposed to have between four and five thousand head of cattle. He further testified that it had always been his understanding that the cause of Zeiger's failure was a loss of fifty to seventy-five thousand dollars in cattle. He himself claimed to have lost a hundred thousand dollars.

This is all the testimony upon the subject of Zeiger's insolvency at the time of the making of the deed of trust, or of his knowledge that he was insolvent at that time. It does not seem that any fair analysis of this testimony would justify the conclusion that Zeiger was insolvent at the time of the making of the deed of trust, or that he knew that he was insolvent at that time, or that the deed of trust was made in contemplation of insolvency with a design to give an undue preference to some of his creditors. Geach's testimony does not show insolvency at the time of the making of the deed of trust. He would not say that it was not his opinion that Zeiger was solvent within six months prior to the assignment, nor could he remember whether or not he had made statements within that time showing that Zeiger was in a solvent condition. There is absolutely no evidence that Zeiger had any knowledge that he was insolvent at the time the deed of trust was made, nor is the evidence such as to justify the conclusion that he must have known at the time that he was insolvent. The bank continued to loan him money from time to time, to the extent of fifty-five hundred dollars, up to March 1895, the assignment being made on the seventh of April following. The burden was on the plaintiff to prove affirmatively these facts as alleged. This they have failed to do. The ruling of the court was therefore correct in sustaining the exception of the defendants as

there was not sufficient evidence to sustain the first finding of fact as found by the master.

In McDonald, Receiver, v. Chemical National Bank, 174 U. S. 618, it is said: "Nor can a finding that the payments and remittances made to the Chemical National Bank on the dates above mentioned were made in contemplation of insolvency and with an intent to prefer that bank, be based on the mere allegation that the Capital National Bank was actually insolvent, and that its insolvency must have been known to its officers. It is a matter of common knowledge that banks and other corporations continue, in many instances, to do their regular and ordinary business for long periods, though in a condition of actual insolvency, as disclosed by subsequent events. It can not surely be said that all payments made in due course of business in such cases are to be deemed to be made in contemplation of insolvency, or with a view to prefer one creditor to another. There is often the hope that, if only the credit of the bank can be kept up by continuing its ordinary business, and by avoiding any act of insolvency, affairs may take a favorable turn, and thus suspension of payment and of business, be avoided."

The eighteenth finding of the master is to the effect that the deed of trust was not made in good faith to secure a debt created simultaneously therewith. The defendants excepted to this finding, on the ground that there was no evidence whatever tending to support the finding. The court sustained this exception.

The transaction leading up to the making and delivery of the deed of trust seems to be in the ordinary course of business; Zeiger was indebted to the bank, and was being pressed for payment in part at least of his indebtedness. He sought to raise some money on his ranch property and cattle, but was unable to do so. He learned that Raynolds, the president of the bank, had money to loan for his kinswoman, Mrs. Lesguereux. She resided in Boston. The loan was negotiated with Raynolds, the

trustee of Mrs. Lesguereux, and the deed of trust was executed to him as her trustee, and the amount loaned, $15,000, was passed to Zeiger's account, and he, by check, paid the money on his indebtedness to the bank, thereby reducing his line of discounts by that amount. At this time Zeiger was in active business, and had a wholesale and retail liquor business, and, as Raynolds testified, was supposed to have between four and five thousand head of cattle. It will not be contended that if Zeiger had procured the loan from some party unknown to the bank, that a mortgage or deed of trust given therefor would not be a valid security, irrespective of what Zeiger did with the money, and it could not be successfully contended that because Zeiger paid the money to the bank and subsequently became insolvent, under the conditions contended for by the plaintiffs herein, that the mortgage would thereby be affected. The indebtedness to Mrs. Lesguereux was certainly concurrent with the execution of the deed of trust. Raynolds, as her trustee, had a right to loan her money to Zeiger; he considered the loan a good one, and the fact that Mrs. Lesguereux had no knowledge of the transaction can not be taken to militate against it. She lived in Boston. Raynolds was a relative, and her money was in his hands for investment under general authority to make all loans.

We are, therefore, of the opinion that the deed of trust was made to secure a debt created simultaneously therewith, and that it clearly comes within the exceptions of the statute, wherein it is declared that nothing in the act shall affect any mortgage, in good faith to secure a debt created simultaneously with such mortgage. The court below was therefore correct in sustaining the eleventh exception of the defendants to the eighteenth finding of the master, wherein he found that the deed of trust was not made in good faith to secure a debt created simultaneously therewith.

We see no error in the court sustaining the defend-

ant's exception to the seventh finding of fact, wherein he finds that the sum of $15,000 was charged on the books of the bank to Mrs. Lesguereux, and the sum of $15,000 credited on the same books to Zeiger, who went through the form of giving the bank a check for that sum.

The undisputed evidence of Zeiger on this question is to the effect that he obtained the money by giving a mortgage to Mrs. Lesguereux, or her trustee, on the Zeiger ranch; that the money was placed to his credit in the First National Bank, and with that money he liquidated a portion of his indebtedness to the bank by checking against his account. · There can be no question that Zeiger received the money from Mrs. Lesguereux, through her trustee, to whom the deed of trust was made, and that he applied the money in part to payment of his indebtedness to the bank.    Upon the whole case we sustain the decision of the court below, to the effect that the making and delivery of the deed of trust by Zeiger was not in contemplation of insolvency and with a design to prefer the defendant bank to the exclusion of the plaintiffs and other creditors; that it was made in good faith to secure a debt created simultaneously therewith, and comes within the exceptions of the statute; that Zeiger was not insolvent, and did not know, nor have reason to know, that he was insolvent at the time of the making and delivery of said deed of trust; that Zeiger received the $15,000 from Mrs. Lesguereux, through her trustee, to whom the deed of trust was executed and delivered by him, and that he applied such sum in liquidation of a portion of his indebtedness to the bank.

It therefore becomes unnecessary to examine critically any of the other exceptions and assignments of error set forth in the record.    If we are correct in these conclusions, it follows that the judgment of the court below, dismissing the plaintiffs' bill of complaint, must be affirmed.    And it is so ordered.

Mills, C. J., McFie and Parker, JJ., concur.

Crumpacker, J., having tried this case in the court below did not participate in this decision.